Appendix E

**GENERAL TERMS AND CONDITIONS**

EDITION JULY 2024

## A. APPLICABILITY

A.1 Unless otherwise explicitly agreed in writing, these General Terms and Conditions shall apply to any and all agreements between Garrets and the Customer including provision management (catering) and stores management agreements, and to any and all orders, sales and deliveries of Goods and Services by Garrets.

A.2 The Customer may not transfer its rights and obligations under any Agreement without the prior written consent of Garrets which shall not be unreasonably withheld.

## B. DEFINITIONS

B.1 Throughout these Terms the following definitions shall be applied and referred to:

B.2 "Garrets" means the Garrets entity named in the agreement, an Order Confirmation or any other communication between the Parties, being Garrets International A/S or Garrets International Limited.

B.3 "Customer" means any party requesting quotations, placing orders, purchasing or otherwise receiving Goods and Services from Garrets, including but not limited to the Vessel and her owners, charterers, operators, managers, masters, agents and brokers. Any affiliates of the Customer, or companies owning Vessels, which take delivery of Goods and/or consumes Goods or otherwise participate in or benefits from sales or services encompassed by these Terms shall be deemed party to these Terms and shall as well as Customers be jointly liable for all obligations pursuant to these Terms in respect of such supplies. The Customer undertakes to procure that such owners and affiliate(s) undertake(s) liability on the terms of this agreement jointly with the Customer and the Customer declares that it has the authority to act

on behalf of such owners and affiliate(s).

B.4 "Parties" means Garrets and the Customer together.

B.5 "Terms" means these General Terms and Conditions.

B.6 "Agreement" means any and all agreements between Garrets and the Customer including provision management and stores management agreements, and any and all orders, sales and deliveries of goods or services by Garrets.

B.7 "Vessel" means the ship, barge or any other type of vessel no matter character, or on- or offshore facility that receives the Goods either as end-user or as transfer unit to a third party.

B.8 "Goods and Services" or "Goods" means any and all items ordered by the Customer or supplied by Garrets, including but not limited to ship stores, equipment, accessories, provisions, bonded items and any services provided by Garrets.

B.9 "Order Confirmation" means a written confirmation from Garrets of an order placed by the Customer and/or confirmation by Garrets of any other agreement. The Order Confirmation may take different forms and have different titles such as "final order" as well as it may be a copy of an order confirmation exchanged between Garrets and its Sub-supplier.

B.10 "The Budget" means the agreed estimated periodic spending's on which basis the rates in provision management and stores management agreements may be set.

B.11 "Sub-supplier" means the ship chandler or other third-party service provider engaged by Garrets to perform the actual delivery of Goods and Services to the Customer.

B.12 "End-user" means the party ultimately disposing of, using or consuming the Goods, including the Vessel and her owners, charterers, operators, managers, disponent owners, agents and brokers.

B.13 "Sanctions laws" means any sanction, prohibition or restriction imposed by the UN, the EU, the UK, the USA, including but not limited to the US Department of the Treasury Office of Foreign Asset Control ("OFAC") including the OFAC Specially Designated Nationals or Blocked Persons List (SDN) and the US Department of State, or any other country or international body.

## C. PRICES AND COSTS

C.1 The agreed rates, the Budget, and prices are calculated based on the cost price level of the Goods and Services and all other costs and charges hereunder taxes and duties known at the time of concluding the Agreement or concluding the Budget.

C.2 Any price increases on Goods and Services, or additional costs not directly linked to the operations of Garrets, borne by Garrets whatsoever, caused by any change in Garrets' contemplated source of supply or otherwise, occurring after the Agreement has been concluded, shall be added to the agreed price of the Goods and Services or in case of provision management and stores management agreements the Budget shall be revised.

C.3 On the 1st of January each year, all day rates will be increased in accordance with the prevailing food inflation rate applicable to the areas of each Vessel's trading pattern, as published by Trading Economics. The increase will reflect the rate published for September in the previous year, calculated for the preceding twelve (12) months. If Trading Economics ceases to publish inflation rates, a reasonable

1



equivalent institute will be substituted by Garrets. All prices and/or rates based on the Budget or not are exclusive of VAT, sales taxes, export or import taxes, dues, quay dues, and other duties and taxes of any kind, which if applicable shall be for the account of the Customer.

Garrets charge the Customer based on calibrated FX rates used for provision and stores budget management purchases, when trading in currencies other than the vessel currency (USD or EUR).

C.4 Besides the costs of trucking from the warehouse of the Sub-supplier to the quay at the port of delivery, all and any costs related to a delivery shall be for the account and risk of the Customer. Such additional costs are not included in the Budget and shall be invoiced by Garrets separately. Additional costs may include, but is not limited to, (i) barges, cranes and other vehicles needed; (ii) costs due to delivery outside normal working hours, delivery on holidays etc. and (iii) if additional staff is needed to perform the delivery.

C.5 If any vessel proposed added to the Agreement is carrying over financial liability towards Garrets, the Customer and Garrets commit to find a solution to settle such financial liability ahead of including such vessel in the Agreement. If the parties do not find an amicable solution, Garrets reserve the right not to include the vessel in the Agreement and to pursue collection of the balance owed with any measures deemed necessary by Garrets.

## D. ORDERING AND ACCEPTANCE OF GOODS

D.1 Any and all orders are subject to an Order Confirmation by Garrets before such order is binding on Garrets.

D.2 In all cases the Order Confirmation shall be the valid documentation for qualities and quantities ordered as well as for other terms agreed in relation to a specific delivery. It is the Customer's sole responsibility to check and address any discrepancies between the Order Confirmation and the Customer's order, and Garrets

shall not be held liable for such discrepancies.

D.3 Any master, officer or crew member of the Vessel or agent /representative of the Customer shall be deemed authorised by the Customer to order, receive and inspect the Goods and Services and confirm that the Goods and Services are in accordance with the accompanying delivery note.

D.4 Orders under provision- or stores management agreements must be submitted to Garrets using the methods and templates requested by and made available by Garrets. Upon request, Customer will give Garrets access to data in Customer's systems in order for Garrets to verify data regarding manning etc.

D.5 In all cases, the Customer must submit orders with no less than 5 working days' notice followed by 48 and 24 hours of notice, where last notice must be final and exact. Any extra costs due to urgent delivery in case orders are placed less than 5 working days in advance shall be reimbursed by the Customer.

## E. RETURNS, CLAIMS AND LIABILITIES

E.1 For Goods meeting Agreement specifications, the Customer may return the Goods subject to acceptance by and terms of the Sub-supplier performing the delivery. Garrets is entitled to an administration fee of USD 75 related to each request for return of Goods.

E.2 If, for whatever reason, the quantity or quality agreed cannot be delivered or is not available for delivery by reasonable means, Garrets cannot be held liable for not supplying the Goods and Services in accordance with the Order Confirmation. In such situation Garrets shall give the Customer notice within reasonable time after Garrets becomes aware thereof. Garrets shall initiate discussions with the Customer on how to mitigate shortcomings in quality and quantity by arranging delivery of the missing quantities at a convenient port/place reasonably acceptable to both Parties. If such delivery is causing increased expenditures or is otherwise more burden-

some in the sole opinion of Garrets, the price will increase correspondingly to the extra expenditures. If the situation causing the increased expenditures hereunder but not limited to the Corona virus or any other virus or similar situation, Garrets may increase the budget either temporarily or for the duration of the Agreement.

E.3 Any and all claims by the Customer must be notified in writing to Garrets no later than 3 calendar days after delivery unless the reasons for the claim could not be detected after thorough examination at the time of delivery in which case the claim must be notified in writing to Garrets no later than 10 calendar days after delivery.

In case of non-delivery 3 calender days after the anticipated delivery time.

If the Customer rejects to receive a delivery at the time of delivery due to quantity or quality concerns the Customer must immediately notify Garrets of the rejection. Claims and/or rejections notified later shall be deemed time barred and fully waived by the Customer.

E.4 If a claim and/or rejection relates to quantity or quality the claim shall be accompanied by photos showing the non-conformity and the original packaging with batch numbers and include a written report detailing the reasons for the claim and/or rejection. The Customer must return the claimed Goods or provide additional documentation as requested from case to case by Garrets.

E.5 If a valid claim exists, one of the following remedies shall apply in the sole discretion of Garrets: 1) a refund of the purchase price of the non-conforming Goods and Services; 2) repair of the non-conforming Goods; or 3) redelivery of the non-conforming Goods and Services.

E.6 Garrets' total liability towards the Customer under any one Order Confirmation shall always be limited to an amount equal to the stated price of the Goods or Services in such Order Confirmation. Garrets' total liability under a provision management or stores management agreement shall for a single incident in no event ex-

ceed an amount equal to the monthly average spending according to the Budget for the Vessel in question for the period in which the incident causing the claim occurred.

This applies irrespective of whether Garrets' liability arises out of the delivery of non-conforming Goods, quantity deficiency, product liability, or acts or omissions committed by Garrets or any Garrets' representatives. Garrets have no liability for any goods containing hazardous materials, chemical substances and the like and will have no liability in connection with any supplier declarations of such.

E.7 In no events shall any party be liable to the other for consequential damages or indirect losses hereunder but not limited to any loss of profit, loss of use, loss of revenue, loss of contracts, loss of business, loss of goodwill, increased costs and expenses, lay-time, demurrage or wasted expenditure. Garrets shall in no event be liable for any delays.

E.8 Garrets cannot be held liable for non-performance, partial performance or delay due to an event of force majeure which shall mean any cause of events beyond the reasonable control of Garrets, hereunder but not limited to diseases or virus etc. in livestock, human diseases of epidemic, or pandemic nature, quarantine, government acts, unavailability of Goods from the sources of supply of Garrets, lack of reasonable means of transportation, cyberattacks, hacking of IT systems and the like, and acts of God.

E.9 In case final delivery is made by a supplier appointed by advise or request from the Customer, Garrets shall have no liability whatsoever related to the delivery and the Goods and Services supplied.

## F. DELIVERY

F.1 Any delivery time agreed shall be regarded as a best estimate and as an approximate delivery time.

F.2 Garrets may in its own discretion deliver the Goods and Services of a single Order Confirmation in one or more lot(s).

F.3 The Customer warrants and ensures that any government permits or approvals necessary for the export of the Goods and Services has been obtained.

F.4 Delivery is deemed to have taken place at the earliest of: when the Goods are placed (a) alongside the Vessel at the named port of delivery, or (INCOTERMS© FAS) (b) alongside the barge or other vessel carrying the Goods to the Vessel, or (c) placed at the Customer's disposal. The Customer has to bear all and any costs related to the Goods and transportation hereof after delivery, hereunder but not limited to costs of cranes and barge delivery, and the Customer will bear the risk of loss of or damage to the Goods occurring after delivery.

F.5 If storage of Goods is arranged by Garrets on request of the Customer the risk shall pass at the time the Goods are placed in storage. Transportation from the place of storage shall be for the risk and account of the Customer.

## G. PAYMENT

G.1 All invoices are issued in accordance with the Wrist Group invoicing policy applicable from time to time. The Customer shall provide Garrets with any requested information and/or documentation necessary to invoice in accordance with the applicable invoicing policy.

G.2 Payment shall be made by the Customer no later than on the due date stated in the invoice.

G.3 Payment shall, unless otherwise agreed in writing, be made in the currency stated on the invoice, and all payments are to be made free of bank charges and other costs.

G.4 Payment shall be made to the Garrets' nominated bank account as stated on the invoice or in cash if no credit has been agreed.

G.5 Payment shall be made in full, without any set-off, deduction and/or discount, unless agreed in writing prior to payment being made.

G.6 In the event of late payment Garrets is entitled to interests at the rate of 2 percent per month pro rata without prejudice to any other rights or remedies available to Garrets.

G.7 All costs and expenses incurred by Garrets in connection with the collection of any overdue payments, including but not limited to interest charges, internal costs, expenses to lawyers and debt collectors, court fees, etc., shall be indemnified by the Customer upon demand from Garrets.

G.8 All payments received by Garrets shall be applied first to settle interest as set out in clause G.6, then to costs as set out in clause G.7, and then to the principal amount.

G.9 Notwithstanding any agreement to the contrary, any and all amounts owed to Garrets will be due and payable immediately in case of bankruptcy, insolvency, moratorium, reorganization or other situations of the Customer which affect Garrets' rights generally or which in the sole opinion of Garrets adversely affects the financial position of the Customer.

G.10 Garrets shall at all times be entitled to require that the Customer provides security, hereunder but not limited to prepayment of deposit for the proper performance of all its payment obligations to Garrets in such manner as shall be deemed sufficient by Garrets. Failure to immediately provide such security shall entitle Garrets, inter alia, to suspend further performance of any and all orders.

## H. OWNER'S GOODS OR SUPPLIES

H.1 In situations where Garrets has agreed to store and transport items or goods on behalf of the Customer (such items are referred to as ''Owner's Goods''), the sole risk of the Owner's Goods while the goods are in the custody of Garrets, or third parties acting on Garrets' behalf, remains with the Customer.

H.2 The Customer shall ensure that insurance is covering the Owner's Goods during the period of transport and storage by Garrets or its representatives.

H.3 Garrets' liability for carriage or storage of the Owner's Goods shall

always be limited in accordance with the clauses in article E.

## I. MARKETING VISUALS AND DATA PROTECTION TERMS

I.1 The Customer hereby acknowledges and accepts that Garrets may capture photographs of the Customer's Vessel, both inside and outside, as well as photographs including the Customer's employees, during on-site delivery of goods or services, for marketing purposes, including but not limited to social media.

I.2 The Customer warrants on-site compliance with applicable data protection rules and regulations. Both parties acknowledge that they individually act as data controllers and agree to uphold their respective obligations under the applicable data protection rules and regulations.

## J. SANCTIONS COMPLIANCE ANTICORRUPTION/BRIBERY

J.1 Customer warrants that
(i) the Customer and the End-User is not in breach of any Sanctions Laws;
(ii) that the Customer is purchasing the Products as principal and not as agent, trustee or nominee of any person or company with whom transactions are prohibited or restricted under any Sanctions Laws;
(iii) the Vessel is not and will not be employed, chartered or controlled by any person or company, or transport any cargo, contrary to the restrictions or prohibitions under any Sanctions Laws;
(iv) the Customer, the Vessel, or the End-User will not use or otherwise employ the Goods or the Vessel for any purpose contrary to the restrictions or prohibitions under any Sanctions Laws.
J.2 The Customer acknowledges that its conduct is subject to certain anti-corruption and anti-bribery laws and regulations. Therefore, the Customer shall comply with all such applicable laws and regulations and agrees not to offer, promise, pay or authorize the payment of any money or anything of value, or take any action in furtherance of such a payment, whether by direct or indirect means, to any public official or private individual to influ-

ence the decision of such person in the performance of any duties.

J.3 It is of highest importance to Garrets not to engage in any activity which might be in breach of any Sanctions Laws or any anti-corruption and anti-bribery laws and regulations, and the Customer is obliged to immediately notify the Garrets of any risk of such breach.

J.4 If Garrets, in its sole discretion, believes that a breach of clause J.1 – J.3 has occurred Garrets is released from any and all obligations under any agreement with no compensation owed to the Customer, and the Customer shall be fully liable to Garrets for all losses, claims, costs and expenses suffered as a consequence of such breach. If the Customer in the reasonable opinion of Garrets might be in breach of clause J.1-J.4. Garrets has the right not to supply and/or not to credit any cash purchase relating to transactions that may be perceived as being in breach of a sanction. This also applies in case the Customer does not give adequate or sufficient explanation to an inquiry from Garrets

## K. ACCEPTANCE OF THESE TERMS

K.1 If the company to whom the Order Confirmation is issued is not the registered owner of the Vessel, the master or any other officer or representative of the Vessel by signing or stamping the delivery notes or other similar document shall be deemed to have full authority on behalf of the Vessel and her owners to accept these Terms.

K.2 It is the responsibility of the Customer to inform Garrets of any changes to ownership, flag and/or names of the Vessels covered by an Agreement. If such changes affect the rights and obligations of Garrets in any manner Garrets is entitled to terminate in writing the agreement in question in relation to the affected Vessel with 15 days' written notice.

## L. LAW AND ARBITRATION

L.1 These Terms, and any and all Order Confirmations, agreements and / or transactions to which these Terms apply, shall be governed by and con-

strued in accordance with Danish substantive law. CISG does not apply.

L.2 Any dispute between the Customer and Garrets, including, but not limited to, any disputes regarding the existence, validity or termination of these Terms, shall exclusively be settled by arbitration administered by The Danish Institute of Arbitration in accordance with the Rules of Simplified Arbitration adopted by The Danish Institute of Arbitration and in force at the time when such proceedings are commenced. The place of arbitration shall be Copenhagen. The language of such proceedings shall be English. If the claims and counterclaims exceed USD 500,000 in total the tribunal shall consist of three arbitrators and there may be an oral hearing, but otherwise the aforementioned Rules of Simplified Arbitration shall apply. The members of the Tribunal may be of Danish nationality, which also applies in case the Danish Institute of Arbitration shall appoint a sole arbitrator.

L.3 Notwithstanding anything to the contrary in clauses L.1 and L.2 above, Garrets shall - without prejudice to i) any rights hereunder of Garrets and / or ii) any claim raised pursuant to clause L.2 above - have the right to proceed against the Customer and / or any third party and / or the Vessel in such jurisdiction as Garrets in its sole discretion sees and deems fit, inter alia for the purpose of securing payment of any amount due to Garrets from the Customer. In such circumstances, the proceedings shall be governed by the General Maritime Law of the United States of America with respect to the existence of a maritime lien (regardless of the country in which Garrets takes legal action) and in all other respects by the laws (substantive and procedural) of the jurisdiction so chosen by Garrets.
To the extent the application of the General Maritime Law of the United States of America with respect to the existence of a maritime lien is not recognized in the jurisdiction discretionarily chosen by Garrets in accordance with this clause L.3, the proceedings against the Customer and / or any third party and / or the Vessel shall be governed solely by the laws (substantive and procedural) of the jurisdiction

chosen by Garrets in accordance with this clause L.3.

## M. SEVERABILITY

M.1 Should any part of these Terms be held invalid, void or unenforceable by applicable law, the remainder of the Terms shall remain in full force.

## N. VALIDITY DATE

N.1 These Terms shall be in force and valid for any and all contracts, orders, sales and deliveries of goods or services by Garrets with effect from **July 12, 2024.**